## A04A0389. MILLEN v. THE STATE.
(600 SE2d 604)

PHIPPS, Judge.

Following the shooting death of Sheila Williams, a jury found her boyfriend, Homer Allen Millen, Jr., guilty of voluntary manslaughter, battery, and possession of a firearm during the commission of a crime.[1] Millen appeals, claiming that there was insufficient evidence to support the gun possession charge and that he received ineffective assistance of counsel. Because these claims lack merit, we affirm.

Viewed in the light most favorable to the jury verdict, the evidence showed that Williams lived at Millen's house, along with three of her four children — her 19-year-old daughter, Jessica Salcido, and two younger siblings. Williams's 17-year-old son, Adam Salcido, lived in a different house nearby.

Jessica Salcido testified that, on the night of January 15, 2001, Williams and Millen were drinking alcohol and arguing. Millen entered Jessica's room, slapped her, tried to stab her with a pocket knife, and pinned her to the wall. Williams helped free Jessica, who fled with her younger siblings to Adam's house. When Jessica left Millen's house, he still had the knife and was "wrestling around on the floor" with Williams.

After seeing that Jessica had a black eye and learning what had happened at Millen's house, Adam grabbed his rifle and some chains and quickly left the house. Adam testified that he drove to Millen's house because he was afraid his mother was in danger. When he arrived at the house, Millen "had [Williams] pinned in the door frame between the door and the door frame." Adam smashed a window in the door with the butt of his rifle, and Millen fled. Adam tried to

---

[1] The jury also found Millen guilty of felony murder and aggravated assault, but the trial court ruled that those counts merged into the voluntary manslaughter conviction.

convince his mother to leave with him, but she refused. Meanwhile, Millen began screaming profanity at Adam from an upstairs window and threatening to kill him. Adam fired a round from his rifle into the air in an effort to "shut [Millen] up" and to show that he was "fed up" with Millen's threats.

Adam then put his rifle in the car and told Williams that he was leaving. At her urging, however, he agreed to stay and try to calm Millen down. Adam entered the house and started "screaming for [Millen]," because he did not know where Millen was and the house was dark. After Millen "hollered something from upstairs," Williams walked upstairs, followed by Adam. Williams said, "[Millen], it's me," and began walking down the dark hall. Adam heard a shot fired, felt "the blast from it," and heard his mother fall to the floor. He then "heard a round rechamber" and turned and ran as Millen screamed, "I'll kill you too, you mother f-er, you pansy, little bitch."

Adam ran to the house next door, where the occupant — Millen's mother — called the police. When the police arrived at Millen's house, he was driving away. Inside, they found Williams's body.

Millen gave a different version of events. He testified that after he and Williams had been arguing, she put a knife to her own head. While he was grabbing the knife away, Jessica charged at him and injured herself. He then ordered Jessica to leave his house, and he and Williams went to bed. Later, Millen awoke to the noise of someone banging at the door downstairs. As he went to answer it, Adam bashed in the window with a gun barrel, which he pointed at Millen "trying to get it lined up." Millen ran to the electrical closet and turned off the power, then went upstairs to his bedroom. He looked out the window and saw Williams and Adam fighting outside, so he began yelling at Adam and threatening him. Adam then fired his gun at the house, prompting Millen to grab and load his own gun. A few minutes later, Millen heard noises and saw someone coming down the hall. He "knew it had to be Adam" and was afraid that Adam was coming to kill him. Millen aimed his gun toward the hall "and it went off." Later, he found Williams's body on the floor in the hall. He denied having heard Williams call his name before he shot her.

1. Millen asserts that there was insufficient evidence to support his conviction of possession of a firearm during the commission of a crime because the state failed to show that he could not lawfully possess a firearm. This argument lacks merit. OCGA § 16-11-106 (b) makes it a felony to have a firearm on or within arm's reach of one's person during the commission of certain crimes, including voluntary manslaughter and aggravated assault. The statute "does not make it a crime to be *illegally* in possession of a firearm during the commission of a crime, but makes it a crime to be in the possession of a firearm

during the commission of a crime."[2] Thus, the state was not required to prove that Millen could not lawfully possess a firearm.

Nevertheless, Millen argues that the language of the indictment necessitated such proof. The indictment charged that "on or about the 16th day of January, 2001, [Millen] did unlawfully . . . have on and within arm's reach of his person a firearm, . . . during the commission of [multiple felonies]." Millen interprets this language as charging that his possession of the firearm was, by itself, unlawful. A more reasonable interpretation of the indictment, however, is that it alleged that Millen's possession of a firearm during the commission of other crimes was unlawful, not that his possession of the firearm was independently unlawful. Reading the indictment this way, there was no failure of proof.

2. Millen sought a new trial on the ground that he had received ineffective assistance of counsel. After a hearing, the trial court denied his motion.

To prove ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.[3] In reviewing a trial court's determination that the defendant received effective assistance of counsel, "we independently apply the legal principles to the facts."[4]

(a) Millen complains that trial counsel failed to reserve objections to the jury charge, thereby waiving appellate challenges to the charge. But failure to reserve objections to the jury charge constitutes ineffective assistance only if the charge was erroneous or incomplete.[5] Millen contends that the charge was erroneous in several respects.

(i) He claims that the court should not have charged the jury on mutual combat because there was no evidence that he and Williams were fighting when he shot her. We disagree.

Jury charges must be adjusted to the evidence in the case.[6] If there is some evidence from which the jury could find that both parties intended to resolve their differences by fighting each other with deadly weapons, then a charge on mutual combat is justified.[7] There was evidence that Millen and Williams had been fighting throughout the evening; that he was armed at first with a knife and

---

[2] (Emphasis supplied.) *Spence v. State*, 233 Ga. 527, 528 (1) (212 SE2d 357) (1975); see also *Shirley v. State*, 260 Ga. App. 309, 310-311 (1) (581 SE2d 320) (2003).

[3] *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000).

[4] Id. at 88.

[5] *Turner v. State*, 245 Ga. App. 294, 299 (4) (i) (536 SE2d 814) (2000).

[6] *Vanwinkle v. State*, 263 Ga. App. 19, 20 (2) (587 SE2d 142) (2003).

[7] *Carreker v. State*, 273 Ga. 371, 372 (2) (541 SE2d 364) (2001); see also OCGA § 16-3-21 (b) (3).

later with a shotgun; that Williams's son brought a rifle to the house and fired it; and that Williams and her son then went upstairs to confront Millen. This evidence was sufficient to support the mutual combat charge.

(ii) Millen asserts that the court erred in giving the following instruction: "[I]n applying the doctrine of self defense, the standard is whether the circumstances were such that they would excite the fears of a reasonable person, not whether the circumstances excited the fears of Mr. Millen." Millen argues that the applicable benchmark is a reasonable person *in his position* and that, as given, the charge obscured this nuance. Again, we disagree. The court's charges on reasonable belief in the context of a justification defense span five pages of the trial transcript. Taken as a whole, those charges adequately instructed the jury to determine how a reasonable person would have acted in Millen's circumstances.[8]

(iii) Millen argues that the court gave conflicting charges on the duty to withdraw or retreat from mutual combat.

The court told the jury that a killing during mutual combat could be justified if Millen reasonably believed the force he used was necessary to prevent death or great bodily injury to himself, or to prevent a forcible felony. The court continued:

> But if it appears that the deceased was not the aggressor, then in order for the killing to be justified, if such killing was the result of mutual combat, it must further appear that the defendant withdrew from the encounter, and effectively communicated to Sheila Hulsey Williams the intent to do so. . . .

Later, the court said: "A person is not justified in using force if he . . . was engaged in mutual combat, unless he withdraws from the encounter and effectively communicates to such other person his intent to do so."

We find no inconsistency in these instructions. Mutual combat is not a complete defense to a murder charge; rather, it is a defense which, if accepted by the jury, may result in reduction of the crime to voluntary manslaughter.[9] But if the defendant has withdrawn from the mutual combat and later kills in self-defense, then the killing may be justified and the defendant may be found not guilty.[10] The court's instructions adequately conveyed these principles to the jury.

(iv) Millen claims error in the court's instruction that

---

[8] See *Bracewell v. State*, 243 Ga. App. 792, 797 (3) (534 SE2d 494) (2000) (approving charges similar to those given here).

[9] See *White v. State*, 179 Ga. App. 276, 277 (1) (346 SE2d 91) (1986).

[10] OCGA § 16-3-21 (b) (3); *Lancaster v. State*, 250 Ga. 871, 873 (3) (301 SE2d 882) (1983).

it is not illegal to possess a firearm for your defense. Regarding the charge of possession of a firearm during the commission of a felony, if you find that the defendant was justified in having said weapon for his protection, unless you find that he committed the underlying felony, then you will not be able to find him guilty of possession of a firearm during the commission of a felony.

According to Millen, this charge "omits" his defense that he was acting in defense of his habitation[11] and "misconstrues the principles of justification itself." On the contrary, the charge neither foreclosed Millen's habitation defense (on which the judge thoroughly charged the jury) nor misconstrued the defense of justification. We find no error.

Because Millen shows no error in the jury charge, he cannot prove ineffective assistance of counsel based on counsel's failure to reserve objections to the charge.

(b) Millen also argues that trial counsel was ineffective in failing to demand a pre-trial hearing to determine whether he was immune from prosecution.

OCGA § 16-3-24.2 provides that a person who uses justifiable force in self-defense or in defense of his habitation is immune from criminal prosecution for doing so "unless any deadly force used by such person utilizes a weapon the carrying or possession of which is unlawful by such person under" OCGA § 16-11-131, among other statutes. OCGA § 16-11-131 criminalizes the possession of firearms by convicted felons. Thus, convicted felons cannot enjoy the immunity conferred by OCGA § 16-3-24.2. In *Boggs v. State*,[12] this court held that "the decision as to whether a person is immune under OCGA § 16-3-24.2 must be determined by the trial court before the trial of that person commences."[13] Millen contends that trial counsel was ineffective in not requesting a pre-trial hearing to determine his immunity.

But even if counsel should have done so, Millen fails to show that this oversight harmed him. During trial, the court ruled that Millen was not entitled to the immunity created by OCGA § 16-3-24.2 because he was a convicted felon who could not lawfully possess a firearm. Millen does not challenge that ruling, nor does he show that

---

[11] See OCGA § 16-3-23.
[12] 261 Ga. App. 104 (581 SE2d 722) (2003).
[13] Id. at 106.

it would have been different if the judge had made it before trial, instead of during trial. Accordingly, we find no ineffective assistance of counsel.

(c) Millen argues that counsel was ineffective for failing to object to a religious reference by the prosecutor during closing argument. The record, however, shows that closing arguments were not transcribed. Without such a transcript, we cannot review this claim of error.[14]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

## ON MOTION FOR RECONSIDERATION.

In asserting error in the prosecutor's closing argument, Millen's brief cited to that argument as follows: "(Closing, 4)." This format did not comply with Court of Appeals Rule 27 (a) (1), which provides that "[r]ecord and transcript citations must be to *the volume or part of the record or transcript* and the page numbers that appear on the appellate records or transcript as sent from the court below."[15] The requirement that the appellant must cite the volume or part of the transcript is particularly important in cases such as this one, which has a ten-volume record spanning thousands of pages.[16]

Despite Millen's failure to follow our rules of citation, we reviewed the trial transcript and discovered, on page 1212, a notation indicating that closing arguments had not been transcribed. Accordingly, we did not reach the merits of Millen's claim of error.

On motion for reconsideration, Millen insisted that closing arguments were, in fact, transcribed. Again, he failed to provide any citation to a specific volume of the record. Nonetheless, we reviewed the record extensively, despite our rule that we will not cull the record on behalf of a party.[17] We discovered the transcript of closing arguments in a volume of the record separate from the volumes containing the trial transcript, out of chronological order.

We take this opportunity to reiterate the importance of following correctly our rules of citation to records and transcripts. These rules, like others governing the form of appellate briefs, "were created not to provide an obstacle, but to aid parties in presenting their arguments

---

[14] See *Jackson v. State*, 256 Ga. App. 829, 831-832 (5) (570 SE2d 40) (2002); *Hayes v. State*, 236 Ga. App. 617, 618 (1) (512 SE2d 294) (1999).

[15] (Emphasis supplied.) See also Court of Appeals Rule 27 (c) (3) (iii).

[16] See generally *Yang v. Washington*, 256 Ga. App. 239 (1) (568 SE2d 140) (2002).

[17] See id.

in a manner most likely to be fully and efficiently comprehended by this Court."[18]

Turning to the merits of Millen's claim of error, we find no impropriety in the prosecutor's closing argument. The prosecutor stated:

> Sheila Hulsey Williams will be no one's candidate for mother of the year. . . . It would be easy for me not to give a hundred percent to this case. It would be easy for me to sit back and say, well, I'll put effort into it, but not my best effort. *But you know, the law, thou shalt not kill, is not, thou shalt not kill only good people. The law is thou shalt not kill.* And so, I would in my own mind, be doing this job that I have, a disservice if I didn't give my best to this case.[19]

Defense counsel did not object to the prosecutor's comments. Millen claims that counsel's failure to object constituted ineffective assistance, because the italicized language "made an attempt to appeal to the religious beliefs of the jurors" and "invoked a higher moral authority that diverted the jury from the discretion provided to them under state law."

We disagree. Although "[r]eferences to religion that invite jurors to base their verdict on matters not in evidence should be avoided in prosecutorial argument,"[20] no such transgression occurred here. The prosecutor in no way invited the jury to disregard any civil laws in favor of religious ones. We find no error in defense counsel's failure to object.

*Accordingly, the motion for reconsideration is denied.*

DECIDED MAY 6, 2004 —
RECONSIDERATION DENIED JUNE 16, 2004.

*Clark & Towne, Wystan B. Getz*, for appellant.
Homer A. Millen, Jr., *pro se.*
*Richard R. Read, District Attorney*, for appellee.

---

[18] (Punctuation and footnote omitted.) *Campbell v. Breedlove*, 244 Ga. App. 819, 821 (535 SE2d 308) (2000).
[19] (Emphasis supplied.)
[20] (Citation omitted.) *Morgan v. State*, 276 Ga. 72, 74 (2) (575 SE2d 468) (2003).