A05A0574. OLARTE v. THE STATE.
(614 SE2d 213)

RUFFIN, Chief Judge.

A Hall County jury found Janeth Christina Olarte guilty of armed robbery, theft by taking a motor vehicle, and possession of a firearm during the commission of a felony. Olarte appeals, challenging the sufficiency of the evidence establishing venue. She also contends that she received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

1. "As with all other essential elements of a crime, weighing the evidence of venue is a function of the jury, not of this [C]ourt."[1] Instead, we "review the evidence in the light most favorable to the verdict and . . . determine if there is sufficient evidence to support the verdict beyond a reasonable doubt."[2]

Viewed in this manner, the evidence shows that, on October 25, 2000, Antonio Cuevas was cleaning the house where he lived with his two cousins. Olarte, who had previously dated one of the cousins, knocked on the door and asked to see her former boyfriend. Cuevas

---

[1] *Ward v. State*, 270 Ga. App. 427, 428 (606 SE2d 877) (2004).
[2] Id.

responded that he was not home, and Olarte decided to wait for him. After waiting approximately five minutes, Olarte left. A few minutes later, she returned and waited until a black car outside the house honked its horn. Olarte again left the house, then returned and asked Cuevas whether her friends in the car could come inside. Cuevas said "no," and Olarte went back outside.

A little while later, Olarte along with four men and another woman entered the house. One of the men pointed a gun at Cuevas' head, and Cuevas was told to "shut up" or he would be killed. Three of the intruders took him back to a bedroom, where he was ordered to the ground and hit several times. The intruders then began removing items from the house and placing them in the car. At some point, Olarte came into the bedroom, ordered Cuevas to " '[s]hut up and don't do anything,' " and took a suitcase filled with clothing from the house. One of the men then placed a gun to Cuevas' head and demanded his car keys. Cuevas surrendered his keys, and the intruders left, taking his car and numerous other items. After the group left, Cuevas asked his neighbor to call the police, and officers arrived a few minutes later.

On appeal, Olarte argues that the State failed to prove venue in Hall County beyond a reasonable doubt. She bases this argument primarily on the fact that Cuevas could not identify the county in which his home was located. Cuevas, however, testified that he lived on Old Plain View Road and one of the responding officers testified that he was called to investigate a robbery at 3744-H Old Plain View Road in Hall County, where he spoke with Cuevas, the victim.[3] Given this evidence, the jury was authorized to find that the State sufficiently proved venue in Hall County.[4]

2. In six enumerations of error, Olarte contends that she received ineffective assistance of counsel at trial. To succeed on this claim, Olarte must show that trial counsel's performance was deficient and that the deficiency prejudiced her defense to the extent that, absent counsel's error, a reasonable probability exists that the jury would have reached a different verdict.[5] In making this showing, the defendant " 'must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct.' "[6]

---

[3] Although Olarte contends that authorities responded to the home of the neighbor who placed the call to police, the neighbor testified that he lived at 3744 Old Plain View Road.

[4] See *Ross v. State*, 268 Ga. 122, 123 (2) (485 SE2d 780) (1997), overruled in part on other grounds, *Bishop v. State*, 271 Ga. 291, 291-292 (2) (519 SE2d 206) (1999).

[5] See *Millen v. State*, 267 Ga. App. 879, 881 (2) (600 SE2d 604) (2004); *Kinney v. State*, 234 Ga. App. 733, 736 (7) (506 SE2d 441) (1998).

[6] *Kinney*, supra at 736 (7).

(a) Olarte first argues that trial counsel was ineffective in failing to object to the trial court's "sequential jury instruction" regarding armed robbery and the lesser included offenses of robbery and theft by taking.[7] Specifically, she contends that the trial court improperly instructed jurors that they should not consider the lesser included offenses until the jury as a whole voted to acquit her of the greater offense.

A trial court commits reversible error by charging a jury that it must unanimously acquit the defendant of the greater offense before considering a lesser included offense.[8] No such error, however, occurred here. With respect to both lesser offenses, the trial court charged the jury as follows:

> If you do not believe by evidence submitted by the State of Georgia beyond a reasonable doubt that Ms. Olarte is guilty of armed robbery, or if your jury cannot reach a verdict in Count 1, armed robbery, but your jury does believe by evidence submitted by the State of Georgia beyond a reasonable doubt that Ms. Olarte is guilty of the lesser included offense . . . then you would be authorized to find Ms. Olarte guilty of [the lesser included offense].

Similarly, when discussing the verdict form, the court charged that if the jury found the defendant not guilty of armed robbery, "or if the jury is unable to reach an [sic] unanimous verdict as to . . . armed robbery, then the jury would and can consider the . . . lesser included offenses of robbery and theft by taking."

The court's instructions did not require the jury to acquit Olarte of armed robbery before deliberating on the lesser offenses. In fact, jurors were specifically told that they could consider the lesser offenses if they were unable to reach a verdict on armed robbery. Furthermore, although Olarte asserts that a trial court may not instruct jurors to deliberate on the greater charge before addressing a lesser charge, she is incorrect. As noted by our Supreme Court, "[a] trial court may instruct a jury to consider a greater offense before it considers a lesser offense."[9] Accordingly, the trial court did not give an improper "sequential jury instruction," and trial counsel's failure to

---

[7] As noted by Olarte, trial counsel failed to reserve objections to the trial court's jury charge.

[8] See *Kunselman v. State*, 232 Ga. App. 323, 324-325 (1) (501 SE2d 834) (1998); see also *Cantrell v. State*, 266 Ga. 700, 703 (469 SE2d 660) (1996) ("[W]here, as here, a jury deliberates a greater offense and an included offense, unanimity is not required for the greater offense before the jury can vote on the included offense.").

[9] *Armstrong v. State*, 277 Ga. 122, 123 (2) (587 SE2d 5) (2003).

object on this ground does not constitute ineffective assistance.[10]

(b) Olarte also claims that counsel should have objected to language in the court's instructions that, in her opinion, directed jurors only to consider evidence offered by the State in determining guilt or innocence. Once again, she focuses on the charge relating to armed robbery and its lesser included offenses. As quoted above, the trial court instructed jurors that if they did not "believe by evidence *submitted by the State of Georgia* beyond a reasonable doubt that Ms. Olarte is guilty of armed robbery," but they did "believe by evidence *submitted by the State of Georgia* beyond a reasonable doubt that Ms. Olarte is guilty of [a] lesser included offense," then they would be authorized to find her guilty of the lesser offense.[11] According to Olarte, the court's emphasis on evidence presented by the State led jurors to disregard evidence she offered, including her own trial testimony.

We disagree. The trial court instructed jurors that the burden of proof rests on the State and that the State must "prove every material allegation of the criminal charges and every essential element of any crime charged by evidence beyond a reasonable doubt." In our view, the trial court's reference to "evidence submitted by the State of Georgia" merely reinforced the requirement that the *State* prove Olarte guilty beyond a reasonable doubt. Furthermore, the trial court instructed jurors that reasonable doubt "is a doubt for which a reason can be given, arising from a consideration of the evidence, a lack of evidence, a conflict in the evidence or any combination of these." The trial court also charged that "[e]vidence includes *all* the testimony of the witnesses and the exhibits admitted during the trial."[12]

Read in its entirety,[13] the jury charge properly instructed jurors on the State's burden of proof, reasonable doubt, and the definition of evidence. Moreover, even if the trial court erred in including the complained-of language in the charge, such error does not require reversal because the charge as a whole was neither confusing nor misleading.[14] We note that, just before the allegedly offensive language, the trial court instructed jurors to make a determination as to Olarte's guilt or innocence on the armed robbery charge "after considering the testimony and evidence presented to you." This

---

[10] See id.; *Camphor v. State*, 272 Ga. 408, 414-415 (6) (d) (529 SE2d 121) (2000); see also *Millen*, supra at 881 (2) (a) ("[F]ailure to reserve objections to the jury charge constitutes ineffective assistance only if the charge was erroneous or incomplete.").

[11] (Emphasis supplied.) The trial court used this phrasing when discussing the lesser included offenses of robbery and theft by taking.

[12] (Emphasis supplied.)

[13] See *Spearman v. State*, 267 Ga. 600, 602 (5) (481 SE2d 814) (1997).

[14] See *Carey v. State*, 263 Ga. App. 109, 112 (4) (588 SE2d 434) (2003).

portion of the instruction was not limited to evidence "submitted by the State of Georgia," and the jury ultimately found Olarte guilty of armed robbery, not one of the lesser offenses.

Under these circumstances, we cannot find that the court's charge led the jury to disregard the evidence Olarte presented.[15] Accordingly, counsel was not ineffective in failing to object to the charge on this basis.[16]

(c) Next, Olarte claims that trial counsel should have objected when the State introduced a police officer to prospective jurors during voir dire as a member of a "gang task force." According to Olarte, the prosecutor improperly referred to the officer's work with gangs "in direct violation" of a pretrial ruling prohibiting any comment that might connect Olarte to gang activity.

The record shows that, prior to voir dire, the trial court instructed the State not to mention anything about gang activity in opening statements. The judge further stated: "I'll still let you present it, but you're going to have to give it to me outside the presence of the jury by way of your witnesses if you want to go there." Later that day, the prosecutor introduced a police officer during voir dire as "Gary Moore of the gang task force." The next day, the trial court prohibited the prosecution from discussing "gang stuff," including whether or not Olarte was a gang member. Defense counsel then asked the trial court to prevent the State from introducing any law enforcement officer at trial as a gang task force member, and the court did so.

We note that, the record belies Olarte's claim that the prosecutor violated a court order by introducing an officer as a gang task force member during voir dire. Before voir dire, the trial court merely instructed the State not to mention gang activity. We do not believe that including the word "gang" in Officer Moore's job title contravened this ruling. Moreover, even if trial counsel should have objected on this ground, we cannot find prejudice. Olarte has cited no evidence that the word "gang" was used at any other time during the proceedings or that the State drew any connection between the crimes charged and gang activity. Furthermore, when Gary Moore testified at trial, he introduced himself as "an investigator with the Hall County Sheriff's Office."

Given the minimal reference to the "gang task force" during voir dire, as well as the fact that prosecutors never tried to link Olarte to

---

[15] See *Cape v. State*, 246 Ga. 520, 525-526 (8) (272 SE2d 487) (1980); *Carey*, supra.

[16] See *Millen*, supra.

gang activity, no reasonable probability exists that the jury would have reached a different verdict had counsel objected. Accordingly, Olarte has not shown that counsel's alleged deficiency prejudiced her.[17]

(d) Olarte argues that counsel should have objected to the trial court's charge on coercion, which, she contends, was incomplete.[18] Coercion, however, is an affirmative defense.[19] And " '[t]o establish an evidentiary foundation for an instruction on an affirmative defense, the defendant must admit to the crime charged.' "[20]

On appeal, Olarte claims that her own trial testimony raised a coercion defense. A review of that testimony, however, shows that she never admitted participating in armed robbery, theft by taking a motor vehicle, or possession of a firearm during the commission of a felony. In fact, Olarte testified that she went to Cuevas' house to see her ex-boyfriend. When Cuevas indicated that he was not there, she decided to wait and went outside to tell the person who had given her a ride to leave. She then heard her name called from the house, returned, and saw several people she had just met "running around" the house. She did not see any guns. When she asked what was going on, "[t]hey grabbed [her] hand [and] took [her] to [the] room where [Cuevas] was."

Olarte testified that she remained in the room with Cuevas and did not try to stop the people from "tearing up" the house because she was scared. But she denied taking anything from the house or seeing anyone else remove any items. At some point, a man grabbed her hand, "threw" her into Cuevas' car, and they left the scene. According to Olarte, she had no choice about whether she could stay or leave the scene at that time.

Olarte stated that she did nothing "to help these people [who] were tearing up" Cuevas' home. She also testified that she neither asked the individuals to help her rob Cuevas or tell them that they should rob him. And in his opening statement, defense counsel previewed his client's expected testimony, asserting: "The evidence will show that [Olarte] did not participate in the robbery. Certainly she was there. Did she have the gun? No. Did she threaten anyone with the gun? No. Did she do anything to aid, encourage the robbery? No, she did not."

---

[17] See *Teat v. State*, 237 Ga. App. 867, 869-870 (2) (b) (516 SE2d 794) (1999).

[18] Under OCGA § 16-3-26, "[a] person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury."

[19] See *Blocker v. State*, 265 Ga. App. 846, 851 (5) (595 SE2d 654) (2004); OCGA § 16-3-28.

[20] *Wilson v. State*, 255 Ga. App. 497, 500 (3) (565 SE2d 847) (2002).

Olarte has pointed to no evidence that she ever admitted involvement in the three crimes with which she was charged. Thus, she was not entitled to a coercion instruction.[21] We recognize that the trial court, in fact, charged the jury on coercion. But, since Olarte was not entitled to such charge, any error in the instruction would constitute at most harmless error.[22] Accordingly, she cannot show that counsel's failure to object to the charge prejudiced her.[23]

(e) Olarte also claims that trial counsel was ineffective in failing to present expert testimony that she suffered from Battered Woman Syndrome and Post-Traumatic Stress Disorder. According to Olarte, testimony from a mental health expert would have supported her claim that she was "coerced by . . . supposed acquaintances to enter [Cuevas'] home." Olarte, however, denied participating in the crimes charged and thus failed to establish an evidentiary basis for a coercion defense.[24] Under these circumstances, we cannot discern how counsel's failure to call a mental health expert prejudiced her.

(f) Finally, Olarte contends that trial counsel should have objected when the State asked her during cross-examination why she did not stay at Cuevas' home following the robbery, report the incident to authorities, or tell anyone her version of events prior to trial. She claims that these questions improperly "exploited [her] statutory right to remain silent."

The record shows that, on direct examination, Olarte testified that she did not try to stop the robbery or report it to police because she was scared of the individuals who entered Cuevas' house. She also stated on direct that law enforcement officers had never spoken with her about the case or asked for her "side of this story," that officers had never shown her a lineup of possible participants, and that she "would . . . have been willing to . . . help identify these other people" had she been asked to do so.

The State's cross-examination did not infringe upon Olarte's right to remain silent.[25] On the contrary, Olarte chose to explain her silence on direct examination. Under these circumstances, trial counsel was not deficient in failing to object to the prosecutor's

---

[21] See *Hanifa v. State*, 269 Ga. 797, 806 (5) (505 SE2d 731) (1998).

[22] See *Smith v. State*, 210 Ga. App. 397 (1) (436 SE2d 104) (1993).

[23] See *Baldivia v. State*, 267 Ga. App. 266, 275 (5) (f) (599 SE2d 188) (2004); see also *Turner v. State*, 245 Ga. App. 294, 296 (4) (b) (536 SE2d 814) (2000) (trial counsel not ineffective in failing to request jury instruction on affirmative defense that is not raised by the evidence).

[24] We note that "[m]ere presence at the scene of a crime is insufficient to show that a defendant is a party to the crime." *Thomas v. State*, 262 Ga. App. 492, 494 (1) (589 SE2d 243) (2003).

[25] See *Klinect v. State*, 269 Ga. 570, 574 (6) (501 SE2d 810) (1998).

questions.[26] Moreover, since Olarte's direct examination brought out virtually the same testimony as the allegedly improper cross-examination, we fail to see how the State's inquiry prejudiced her defense.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED APRIL 22, 2005 —

*Brian Steel*, for appellant.
*Jason J. Deal, District Attorney, Jennifer C. Bagwell, Assistant District Attorney*, for appellee.

---

[26] See *Moore v. State*, 278 Ga. 397, 401 (2) (e) (603 SE2d 228) (2004) (" 'Failure to make a meritless objection cannot be evidence of ineffective assistance.' ").