## TAYLOR *v.* TAYLOR *et al.*

No. 10350. NOVEMBER 14, 1934.

*W. V. Cusler & Son,* for plaintiff.    *A. B. Conger,* for defendants.

GILBERT, J.   Dr. W. L. Taylor executed to his sister, Miss Trudie Taylor, on January 16, 1929, a bill of sale covering his dental equipment.   The paper was absolute on its face, and recited a consideration of $1,700.   Possession of the equipment was not taken by the vendee.   On January 30, 1931, Dr. Taylor, presumably having been divorced from his first wife to whom he was married at the time of the execution of the bill of sale, married Mrs. Allene Taylor, one of the defendants in error.   After his death, which occurred on July 4, 1933, Miss Trudie Taylor executed to his widow, Mrs. Allene Taylor, another bill of sale, absolute on its face, covering the same equipment.   It recited a consideration of one dollar and other considerations.   A few weeks later Miss Trudie Taylor filed the petition in the case at bar, which was afterwards amended. She alleged that the first bill of sale had been made by Dr. Taylor to her to secure a debt of $1,700, and that the second bill of sale executed by her to Mrs. Allene Taylor had been procured through fraud.   She prayed that the latter conveyance be rescinded and canceled.   There were other prayers which had for their object the setting up of the original bill of sale as a lien on the property described in it, and as a claim against the assets of Dr. Taylor, deceased.   The defendant denied the essential allegations of the plaintiff; and the case was tried upon the main issue which involved the validity of and true consideration for the second bill of sale, defendant's contention being that this instrument was valid and had divested Miss Taylor of all title or lien acquired under the first conveyance.   During the trial a witness, Miss Curry, secretary of the attorney who had represented Dr. Taylor in preparing the bill of sale to Miss Trudie Taylor, was introduced, and testified in

effect that this conveyance was a sham, and that its sole object had been to put apparent title in the grantee in order to hide out the property from an expected claim for alimony which Dr. Taylor feared would be brought against him by his then wife. Objection was entered as follows: "We object to the testimony upon the ground that Miss Curry is clerk and secretary and stenographer for Mr. Conger. We object upon the ground that it invades the province of confidential relations with W. L. Taylor, deceased, who was his client. . . And if he can't, then his clerk in his office can't."

Counsel for the plaintiff expressly abandons all grounds of the motion for a new trial, except the one special ground. The only point necessary to be considered is whether the evidence in point, which is set out in this ground, should have been admitted. Counsel argues the case as though two objections had been entered, one under the Civil Code (1910), § 5786 (attorney and client, privileged communication), and the other under § 5858, par. 5 (one party dead, the other can not testify); but the record does not show the second objection. The assignment of error contains both points, but the objection actually made relates to but one. This court, therefore, can consider only the objection made at the time the testimony was offered. Section 5786 provides: "Communications to an attorney, or his clerk, to be transmitted to the attorney pending his employment, or in anticipation thereof, shall never be heard by the court. So the attorney can not disclose the advice or counsel he may give to his client, nor produce or deliver up title-deeds or other papers, except evidences of debt left in his possession by his client. This rule does not exclude the attorney as a witness to any facts which may transpire in connection with his employment." Section 5860 provides: "No attorney shall be competent or compellable to testify in any court in this State, for or against his client, to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relations as attorney, or by reason of the anticipated employment of him as attorney, but shall be both competent and compellable to testify, for or against his client, as to any matter or thing, knowledge of which he may have acquired in any other manner." The rule has a broad scope, and is not confined merely to communicated matters, but extends to items as to which the attorney has acquired his

knowledge by his own observation where this observation was a result of his professional employment. 40 Cyc. 2378 (5). The communication must be of a confidential nature. See citations under 40 Cyc. 2370, note 36. And the rule is not confined to matters relating to litigation, but extends to all cases where the attorney is consulted by his client in the line of his profession. 40 Cyc. 2372. It is also stated that a clerk or amanuensis of the attorney can not testify as to confidential communications in his presence between the attorney and client. 40 Cyc. 2378. The necessity of the rule embodied in Code sections 5786 and 5860 and the reasons underlying it are so well known that they need no discussion here, and it would indeed be a strange holding to decide that these reasons did not apply to a confidential clerk or secretary of an attorney. Under modern practice of law the business of an attorney in most offices can not be conducted without such an assistant. This clerk or secretary, by reason of his or her position, must frequently have almost as much information as to the confidential business of the client as the attorney himself; and it would be clearly against the rule to allow such an assistant to be subpœnaed and required to testify as to matters where the knowledge acquired was through the employment as such confidential clerk or secretary. In the case at bar the subject-matter of the testimony sought from the witness in question related to a matter of a highly confidential nature. She had acquired her knowledge by virtue of her position as the attorney's secretary; and it must be held that she was neither competent nor compellable to testify, exactly as the attorney himself would be held incompetent and uncompellable to testify, had he been offered as a witness.

In State v. Loponio, 85 N. J. L. 357 (88 Atl. 1045, 49 L. R. A. (N. S.) 1017), it was said: "Where legal advice of any kind is sought from a duly accredited professional legal adviser in his capacity as such, the communications relevant to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself, or by the legal adviser, or by the agent of either, confidentially used to transmit the communication, except the client waives the protection." And "Clearly, therefore, where the client has used a confidential agent of transmission which, under the circumstances, it was reasonably necessary for him to do, he will be protected against a betrayal of this confidence by his

attorney." In that case Loponio was an Italian and could not write English, and the witness involved was a scrivener whom Loponio had employed to write the letter to the attorney. In re Putnam, 257 N. Y. 140 (177 N. E. 399, 79 A. L. R. 1423), it was ruled as follows: "A clerk in a lawyer's office, acting as attesting witness of a will drawn by him, may testify as to confidential communications between the testator and the lawyer, where the lawyer, if himself a subscribing witness, would have been permitted to testify." In the opinion it was stated: "Section 354, however, leaves out the words, 'clerk, stenographer, or other person employed,' in permitting an attorney to testify where he has become a subscribing witness to a will. The ruling of the surrogate that Miss Shea's testimony was competent, and that the clerk *shares the privilege as well as the prohibition of the attorney,* was correct." (Italics ours.) We have above referred to the issues made by the pleadings in the case at bar, and the main issue upon which the case was tried. In his charge the court held closely to this main issue; but the testimony in question had been allowed to go to the jury, and we can not escape the conviction that it must have had a strong effect upon the minds of its members. The other evidence was in great conflict, and it may very well be true that what Miss Curry said turned the scales against the plaintiff in error and finally influenced the jury to find against her. We hold that the court erred in not granting a new trial on ground 4 of the amended motion.

It is insisted by counsel for defendants in error, that, as Miss Trudie Taylor was present when the paper was prepared, the testimony was not privileged, invoking the rule that communications between an attorney and client in the presence of third persons or of the adverse party are not within the prohibition. The rule is well recognized; and it has even been held that ignorance of the presence of the third person does not prevent the exception from operating. Thus it has been decided that an eavesdropper or a wiretapper is not incompetent to testify to the communications he overhears. See *Cocroft* v. *Cocroft,* 158 *Ga.* 714, 719 (124 S. E. 346). But Miss Trudie Taylor was not an "adverse party" on this occasion, nor was she such a "third" person as is contemplated by the exception to the rule, nor was she such an "opposite party" as is contemplated by the first ruling in *Stone* v. *Minter,* 111 *Ga.* 45 (36 S. E. 321, 50 L. R. A. 356). While the primary interest

of the attorney was that of serving Dr. Taylor, it would probably not be inaccurate to say that the attorney was primarily representing Dr. Taylor and secondarily representing Miss Trudie Taylor. And the extremely confidential nature of the transaction is not open to argument.

It is insisted by counsel that the objection came too late, and we are cited to the Civil Code (1910), § 5866: "The objection to competency, if known, must be taken before the witness is examined at all." And we are referred to *B. & W. Ry. Co.* v. *Clem*, 80 *Ga.* 534, 538 (7 S. E. 84). Also it is insisted that when the objection was made it was not at once ruled on, and was not again urged. There was a somewhat lengthy colloquy in which counsel and court engaged. During a portion of the time the jury was kept out of the court-room. The subject of discussion was the objection (quoted above) to the evidence offered. The court finally said, "I will overrule the objection." This ruling must have applied to the first and only objection. It is clear that all the while the court had that objection under consideration. It was not necessary that it be renewed. It had been clearly made in the first instance. The case is not like those where objection is made and decision expressly reserved by the court until some time later. We are of the opinion that the points insisted upon by counsel in this connection are not meritorious. The record discloses that Mrs. Allene Taylor did not in her answer seek to have the bill of sale from Dr. Taylor to Miss Trudie Taylor set aside for any alleged fraud about which Miss Curry testified. She claimed title to the dental equipment only by virtue of the bill of sale which she had obtained from Miss Taylor. She based her case on resistance to the effort of Miss Trudie Taylor to set aside *that* contract. Her counsel's contention as to the admissibility of Miss Curry's evidence is based on the idea that the presence of Miss Trudie Taylor was, at the time counsel prepared the bill of sale for Dr. Taylor, that of an adverse party, and it is not contended that Miss Curry's evidence was admissible, as an exception to the general rule, to show fraud as a basis for setting aside the bill of sale above mentioned. As stated, she did not seek to set aside that bill of sale. She is standing upon the bill of sale from Miss Trudie Taylor, and can not impeach her title from Dr. Taylor, and is not seeking to do so; and as Miss Curry's evidence was not offered to show fraud as a basis for setting aside the bill

of sale from Dr. Taylor to Miss Trudie Taylor, we can decide the point only under the general rule as to privileged communications. None of the cases cited require a conclusion different from the one we have reached.    *Judgment reversed    All the Justices concur.*