## S01A1118. ROSEBERRY v. THE STATE.
### (553 SE2d 589)

FLETCHER, Chief Justice.

A Newton County jury convicted Tremayne Roseberry of felony murder and armed robbery. Roseberry contends on appeal that the trial court improperly excluded evidence relating to the victim's character because it would have shown that someone other than Roseberry committed the crimes. We hold that the trial court correctly excluded the evidence offered by Roseberry because Roseberry failed to establish a sufficient factual nexus between the evidence he offered and the proposition for which it was offered. Accordingly, we affirm Roseberry's conviction.[1]

1. At trial, the state presented evidence that, between 9:30 and 10:00 p.m. on Thursday, June 12, 1997, two men robbed Harry's Food Mart ("Harry's"), a convenience-type store in the Springhill area of unincorporated Newton County, and shot the proprietor, Harry

---

[10] See *Alexander v. State*, 270 Ga. 346, 349-350 (509 SE2d 56) (1998).

[1] The crimes for which Roseberry was convicted occurred on June 12, 1997. The grand jury indicted him on October 3, 1997. Roseberry was convicted on March 30, 1999. The armed robbery conviction merged into the felony murder conviction, and Roseberry was sentenced to life imprisonment. Roseberry filed a motion for new trial on April 13, 1999, and amended his motion for new trial on August 10, 2000. The trial court denied Roseberry's motion for new trial on November 3, 2000. Roseberry filed his notice of appeal on December 1, 2000, and the appeal was docketed in this Court on April 26, 2001. Roseberry orally argued his appeal on July 9, 2001.

Hodges, in the head. Hodges was conscious when the police arrived, and he was taken to the hospital and died a few days later.

On the evening of the robbery, Roseberry and his friend Robert Manual were driving around the Springhill area, along with another of their acquaintances, Torafe Williams. Although they were in Manual's car, Williams was driving. Williams testified that Manual told him to let Roseberry and Manual out of the car because they "wanted to go do something." As they left the car, Roseberry asked Manual to get the shotgun from under the backseat, which Manual did. They instructed Williams to pick them up at the same place they were dropped off. Williams circled the area, passing Harry's a couple of times. About ten or fifteen minutes later, Williams saw Roseberry and Manual walking from the direction of Harry's. When they re-entered the car, Roseberry was "kind of tired" and "breathing a little bit hard."

The three companions drove back to Manual's house, and Manual paid Williams twenty dollars for driving. Shortly before Williams left Manual's house that evening, Manual received a telephone call, and Williams heard Manual telling the caller, "We ain't been to Springhill, forget that, we ain't been to Springhill today."

While Roseberry was jailed pending trial, he told his cellmate that he and a man named Robert had robbed Harry's, and Robert had shot the owner of the store. Witnesses also testified that Roseberry and Manual were together throughout the evening, both before and after the time of the robbery, and other witnesses testified that they saw Manual and another, taller man in Springhill near Harry's on the evening of the robbery, around the time of the robbery. Even Roseberry admitted during his testimony at trial that he had been with Manual all evening. He denied, however, having been in Springhill.

Taking the evidence in the light most favorable to the jury's verdict of guilty, we conclude that there was sufficient evidence from which a rational trier of fact could have found Roseberry guilty of felony murder and armed robbery.[2]

2. Roseberry alleges that the trial court erred in excluding evidence from which the jury could have inferred that Hodges was not the victim of a robbery, but instead either shot himself or was shot by someone because of his own illegal activities. Roseberry proposed to support his alternate theory with three witnesses.

Roseberry first offered the testimony of a local bank representative, who was prepared to testify that Hodges' state lottery account for his store had a balance of $6.38 on May 30, 1997, was

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

overdrawn by $2,403 on June 30, 1997, was overdrawn by $2,412 on July 31, 1997, and had a balance of $1,724.18 at the end of August 1997. The bank representative further testified that she had no personal familiarity with the account, had no responsibility with the Georgia Lottery, and her knowledge regarding Hodges' account was limited to the printed account statement. Roseberry also offered the testimony of an individual who would have testified that, on some Sundays at least two years before the robbery, her alcoholic son would purchase alcohol at Harry's. Roseberry's last proposed witness would have testified that neighborhood drug dealers would stand around outside of Harry's Food Mart, and Hodges chased one of them out of his store. one day. She also would have testified that she had bought beer at Harry's Food Mart on Sundays and had seen liquor purchased there once on a Sunday. The trial court excluded these three witnesses' testimony, finding that it was not relevant and impermissibly impugned the victim's character.

Generally, a murder victim's character is irrelevant and, thus, inadmissible.[3] Evidence that impugns a victim's character cannot be admitted unless it has some factual nexus with the conclusion for which it is being offered.[4] Sheer speculation is insufficient. Otherwise, character evidence would be admitted routinely, disguised as relevant to whatever speculative theory the proponent managed to put forth.

Here, Roseberry sought to introduce the evidence of the lottery account balance, the Sunday alcohol sales, and the drug dealers on the premises to show that Hodges had been shot for some reason other than a robbery by Roseberry. But Roseberry failed to show any nexus between the offered evidence and his alternate theory of Hodges' injury. Roseberry merely speculates that there is some connection between Hodges' gunshot wound and the lottery account balance, the Sunday alcohol sales, or the drug dealers on the premises. Accordingly, we conclude that the trial court did not abuse its discretion in excluding the three witnesses offered by Roseberry.

3. Roseberry also contends that the trial court improperly admitted Hodges' repeated descriptions of the robbers because they are hearsay. The state raised the admissibility of these statements in a motion in limine, and Roseberry objected that two of the five statements were cumulative. We conclude that the trial court did not

---

[3] See *Wiseman v. State*, 249 Ga. 559, 561 (292 SE2d 670) (1982).

[4] See *Wayne v. State*, 269 Ga. 36, 39-40 (495 SE2d 34) (1998); *Ford v. State*, 269 Ga. 139, 140 (498 SE2d 58) (1998); *Bryant v. State*, 249 Ga. 242, 243 (290 SE2d 75) (1982); compare *Henderson v. State*, 255 Ga. 687, 689 (341 SE2d 439) (1986) (evidence that showed drug dealer murdered victim to avoid victim disclosing drug dealing was admissible to show that defendant had not committed crime).

abuse its discretion in overruling Roseberry's cumulative objection.[5] As to the hearsay objections that Roseberry now raises on appeal, he failed to raise those objections during the motion in limine hearing or at trial. Accordingly, Roseberry has waived any hearsay objections.[6] Because the evidence presented at trial is sufficient to support Roseberry's conviction without relying on Hodges' descriptions of the robbers, we choose not to address the impact of these hearsay statements on the verdict.

4. Roseberry's final enumeration of error concerns a roughly fourteen-minute videotape that was played to the jury venire before voir dire. This tape was prepared by the Council of Superior Court Judges of Georgia and described the importance of jury service. Approximately two minutes into the tape, the voice-over commentator states,

> Jury service is the vital connection between citizens and the justice system. It's a big part of what the founding fathers of our country meant when they began the Constitution with the words "We The People." No criminals would be brought to justice nor would any civil disputes be settled if it were not for the willingness of the people to give of their time and energy to serve as the fair and impartial conscience of their community. With the pace of modern life being what it is, jury duty is an imposition on your time. It's also one of the most powerful and important means you have to be a part of the system and really make a difference.

The remainder of the tape outlines, in general terms, the jury selection and trial processes.

Roseberry contends that the phrase "no criminals would be brought to justice" impermissibly tainted the jury venire because it suggests that jurors are expected to convict defendants and not acquit innocent citizens. The phrase that Roseberry focuses on, however, is a part of one sentence in a fourteen-minute presentation and, when considered in context, does not suggest that jurors are supposed to convict criminal defendants without regard to their presumptively innocent status.

Furthermore, after the tape was played, the trial court instructed the jury venire that "[t]he video is just a method to familiarize you with court. It of course is not to take the place of any instruction given you by the Court." After the jury was chosen and

---

[5] See *Bright v. State*, 265 Ga. 265, 284 (455 SE2d 37) (1995) (whether to admit allegedly cumulative evidence is within the trial court's discretion).

[6] See *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997).

sworn in but before opening statements, the trial court gave preliminary instructions to the jury, including a charge that the defendant is presumed innocent, the state bears the burden of proving the defendant's guilt beyond a reasonable doubt, and the jury is to base its decision only upon the evidence presented at trial. These same principles were included in the charge the trial court gave at the close of the case. Under these circumstances, we find no error in the playing of the tape to the jury venire.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 2001.

*Millsaps & Carter, James E. Millsaps, Anthony S. Carter*, for appellant.

*W. Kendall Wynne, Jr.*, District Attorney, *Alan A. Cook*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Madonna M. Heinemeyer*, Assistant Attorney General, for appellee.