S06A0772. WIGGINS v. THE STATE.
(632 SE2d 80)

CARLEY, Justice.

A jury found Kourtnay Wiggins guilty of malice murder of Truvoy Washington, and the trial court sentenced him to life imprisonment for that crime. Wiggins' motion for new trial was denied, and he appeals from the judgment of conviction and life sentence entered on the jury's guilty verdict.[*]

1. The State's theory was that Wiggins murdered Washington with a baseball bat, and that robbery was the motive for the homicide. At trial, the prosecution introduced evidence showing that the victim and a group of his friends were drinking at the same bar as Wiggins. When Washington's companions left about 3:00 a.m., he stayed and told them that someone would bring him home. He had his wallet in his possession. Between 3:30 and 4:00 a.m., a resident of the apartment complex where Wiggins lived in a unit rented by his girlfriend heard a pounding noise in the parking lot that "sounded like some type of aluminum, like it could have been a bat or something." At 4:00 a.m., Washington was discovered lying in the parking lot. He was bleeding from an injury to the left side of his head, a pocket of his

---

[*] The murder was committed on August 18, 2001. The grand jury indicted Wiggins on November 15, 2001. The jury returned the guilty verdict on January 30, 2003. The trial court entered the judgment of conviction and imposed the life sentence on January 31, 2003. Wiggins filed a motion for new trial on February 18, 2003, which the trial court denied on October 20, 2005. The notice of appeal was filed on November 11, 2005, and the case was docketed in this Court on January 5, 2006. The appeal was submitted for decision on February 27, 2006.

pants was turned inside out and his wallet was missing. Washington was dead on arrival at the hospital. The cause of death was blunt force trauma to the head.

Because Wiggins lived in the complex and was known to carry a baseball bat, the police wanted to speak with him. His girlfriend initially denied that he was home, but then admitted that he was. The officers did not arrest him, but only requested that he talk with them. He agreed and voluntarily went with them to headquarters. Wiggins initially told the officers that he left the bar at 12:30 a.m. for work and that he returned to his girlfriend's apartment at 7:30 a.m. However, this was inconsistent with the statement of his girlfriend, who had informed the police that he arrived much earlier and told her "he had been in a fight." When the officers expressed doubt about his statement, Wiggins started to offer a different version. At that point, he received the warnings mandated by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Wiggins then admitted striking Washington with a bat, but claimed that he acted in self-defense because the victim and another man had attacked him. His statement also included an assertion that he found a wallet some weeks earlier at the bar, and had spoken with the bar manager about his discovery. However, the bar manager denied that such a conversation occurred. The girlfriend's apartment was searched pursuant to her consent. A baseball bat and other evidence was seized. Later, the apartment was searched pursuant to a warrant, and a bloody plastic bag containing a wallet was found hidden under a mattress. It contained the victim's identification and receipts issued within days of the murder.

At trial, Wiggins did not testify or call any witnesses, but relied upon the claim of self-defense made in his second statement to the officers. When construed most strongly in support of the jury's verdict, the evidence is sufficient to authorize a rational trier of fact to find him guilty of malice murder of Washington beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Wiggins urges that his trial counsel was ineffective. To prevail on that claim requires proof that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In order to meet this burden, Wiggins must overcome the strong presumption that the performance of his defense counsel falls within the broad range of reasonable conduct. *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003). Here, that presumption was reinforced by the testimony of Wiggins' trial attorney herself, who appeared at the hearing on the motion for new trial where she explained her challenged actions and inactions. Having heard all of the evidence,

including counsel's testimony, the trial court found no merit in the ineffectiveness claim. On appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo. *Jones v. State*, 280 Ga. 205, 206 (2) (625 SE2d 1) (2006).

(a) Initially, Wiggins cites the failure of his attorney to object to the admission of both of his statements. He relies upon *Missouri v. Seibert*, 542 U. S. 600 (124 SC 2601, 159 LE2d 643) (2004) and urges that the officers engaged in an impermissible interrogation procedure when they questioned him prior to giving him the *Miranda* warnings.

In *Seibert*, the officers arrested the accused, subjected her to custodial questioning, obtained a confession, and only then complied with the mandate of *Miranda*. Thereafter, a signed waiver was obtained from the arrestee and she gave a second confession. Under these circumstances, the Supreme Court of the United States held that both statements were inadmissible, concluding that

> it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle.

*Missouri v. Seibert*, supra at 614 (IV).

The circumstances in this case are very different. At the time Wiggins made his first statement, he was not under arrest and not subject to custodial interrogation. Defense counsel testified that he admitted to her "that he had not been coerced, that he went voluntarily down to the police station, and he was not under arrest when he made the statement." " '(W)here (an) accused (is) neither in custody nor so restrained as to equate to a formal arrest, any statements made to (an) investigating officer (are) made under noncustodial circumstances and *Miranda* warnings (are) not required.' [Cit.]" *Heckman v. State*, 276 Ga. 141, 143 (1) (576 SE2d 834) (2003). Thus, unlike *Seibert*, Wiggins' initial statement was not subject to suppression. Accordingly, his lawyer was not ineffective for failing to raise a meritless challenge to its admission into evidence.

Moreover, Wiggins' first statement was entirely exculpatory. It was only when the veracity of that statement was challenged that it appeared that he might inculpate himself in the homicide. At that point, the officers complied with *Miranda*, obtained a signed waiver and thereafter took his second statement. In that statement, Wiggins admitted responsibility for the death of Washington, but he did not implicate himself criminally. Instead, he claimed that he acted in

self-defense. Defense counsel testified that, in her interviews with Wiggins, "[h]e said all along that the second statement he gave to the police was what, in fact, had happened. So, according to [him], that was a true statement." "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland v. Washington*, supra at 691 (III) (A). Thus, based on Wiggins' corroboration of his second statement, which he gave after a valid waiver of his rights, counsel made the tactical decision to rely on justification to defend him against the charges. " '[M]atters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel.' [Cit.]" *Fuller v. State*, 278 Ga. 812, 814-815 (2) (c) (607 SE2d 581) (2005). Under the circumstances, there was no ground for objecting to the admission of Wiggins' second statement and, in fact, the lawyer acted responsibly by relying on it as the basis for defending him.

(b) Wiggins also urges that counsel was ineffective because she did not object, on hearsay grounds, to the admission of the receipts found in Washington's wallet. He contends that this evidence showed that the wallet was in the possession of the victim shortly before he was killed, and thus prejudiced the defense by impeaching Wiggins' claim that he found a wallet in the bar weeks before.

The receipts were hearsay to the extent that they were introduced to show the truth of the dates of issuance shown on their faces. See *Massey v. State*, 269 Ga. App. 152, 154 (2) (603 SE2d 431) (2004). However, the admission of hearsay is harmless when it is cumulative of admissible evidence showing the same fact. *Hooten v. State*, 256 Ga. 31, 33 (1) (343 SE2d 481) (1986). The transcript contains eyewitness testimony proving that the victim was in possession of his wallet shortly before he left for the bar on the evening before he was murdered. Thus, Wiggins cannot show that there is a reasonable probability that, but for the admission of the receipts, his statement would not have been impeached and that he would have been found not guilty by reason of self-defense. *Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004) (no prejudice where "the same evidence was presented to the jury through [admissible] testimony . . . .").

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 12, 2006.

*Wystan B. Getz*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Daniel J. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General,* for appellee.