## S09A0395. DAVIS v. THE STATE.
(676 SE2d 215)

CARLEY, Justice.

A jury found Scott Winfield Davis guilty of malice murder and two counts of felony murder. The trial court entered judgment of conviction on the malice murder, and sentenced Davis to life imprisonment. The felony murder verdicts were vacated by operation of law. *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). The trial court denied a motion for new trial, and Davis appeals.[*]

1. Construed most strongly to support the verdict, the evidence shows that after two years of marriage, Davis' wife filed for divorce and moved out of the couple's home. Davis, who did not want to get divorced, threatened to kill anyone who had a sexual relationship with his wife. Davis' wife subsequently began dating David Coffin, and Davis hired a private investigator to follow her. Davis asked the investigator to locate Coffin's home address and telephone number, and after the investigator provided the information to him, Davis said that he was going to drive by Coffin's residence during the next weekend. That Saturday night, Coffin's house was burglarized, and his car was stolen. During the burglary, a call was made from Coffin's home to Davis' house, and later that night Davis made repeated calls to his wife's apartment, asking if she was sleeping with Coffin.

Two days after the burglary, Davis called in sick to work, and sometime that night, Coffin was fatally shot inside his house. The

---

under facts different from those presented here.

[*] The homicide occurred between December 9 and 10, 1996, and the grand jury returned an indictment on November 18, 2005. The jury found Davis guilty on December 4, 2006, and the trial court entered judgment on December 8, 2006. That same day, Davis filed a motion for new trial. An amended motion for new trial was filed on July 31, 2007, and denied on September 10, 2008. The notice of appeal was filed on October 8, 2008. The case was docketed in this Court on November 21, 2008, and oral argument was held on March 9, 2009.

next morning, Coffin's car and other items stolen from his home were found burning near a MARTA station. A gas can and bag found inside the burning car were identified as being similar to items owned by Davis. That night, Coffin's house was destroyed by arson, and his body was found inside.

That same night, Davis made false reports to the police about having twice been attacked by an unidentified assailant at his own house, claiming one attack before, and another attack after, the fire at Coffin's home. During his statement to police about the alleged attacks, Davis said that he knew Coffin had been shot. However, at that time, the police did not know Coffin had been shot due to the charred condition of his body. It was not until the autopsy was later performed that the cause of death was revealed to be a gunshot wound to the head. A few days later, Davis attempted to establish an alibi for himself by asking a neighbor to say that he had seen Davis at a gym on the night of the murder. The evidence is sufficient to authorize a rational trier of fact to find Davis guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Davis claims that the trial court improperly allowed the State, during closing argument, to elicit sympathy from the jury and inject religion into the case by dimming the lights and calling for a moment of silence. However, Davis' claim does not accurately reflect what occurred at trial. The record reveals that the prosecutor merely asked the jurors to remember the victim, after which the lights were dimmed as pictures of the victim, which had been introduced into evidence, were displayed. This did not constitute a call for a moment of silence or an improper religious reference. See *Millen v. State*, 267 Ga. App. 879, 885 (600 SE2d 604) (2004) (on Motion for Reconsideration) (no improper invitation to base verdict on religion). Moreover, because the photographs were properly admitted as evidence in the case, it was not inappropriate for the State to display them during closing argument. See *McPherson v. State*, 274 Ga. 444, 453 (19) (553 SE2d 569) (2001) (no error for State, during closing argument, to display photograph of victim in life that had been admitted at trial). Even if the argument could be construed as an attempt to evoke sympathy, "[a]rgument which evokes sympathy . . . is not necessarily improper." *James v. State*, 270 Ga. 675, 680 (12) (513 SE2d 207) (1999). See also *Dupree v. State*, 267 Ga. 38, 40 (3) (472 SE2d 299) (1996) (not error for a prosecutor to point out victim's family in the courtroom). Furthermore, any purported harm was cured when the trial court instructed the jurors that they could only consider the evidence and the law as charged, and that sympathy for the victim and his family should play no role in their verdict.

See *Harper v. State*, 249 Ga. 519, 535 (14) (292 SE2d 389) (1982) (no reversible error where, after State's alleged attempt to elicit sympathy during closing argument, court charged jury that sympathy could play no role in their determination of guilt or innocence).

3. Davis contends that the trial court improperly charged the jury on the law of party to a crime when there was not any evidence to support such a charge. Contrary to this contention, the trial court did not charge the jury on the substantive law of party to a crime. Rather, the court's instruction on the defense of alibi included the following:

> Presence of the defendant at the scene of the crime alleged, or the defendant's involvement as a coconspirator or as a party to the crime, is an essential element of the crimes set forth in this indictment, and the burden of proof rests upon the state to prove such beyond a reasonable doubt.

This brief mention of party to a crime within the alibi instruction "appears to be no more than a passing general reference . . . ." *Francis v. State*, 266 Ga. 69, 72 (3) (463 SE2d 859) (1995). Moreover, a review of the charge as a whole shows that the trial court fully instructed the jury as to the crimes charged, the presumption of innocence, the defense of alibi, and the State's burden of proof. Within the context of the entire jury charge, it is highly probable that the passing reference to the term "party to the crime" did not contribute to the verdict, and therefore any impropriety was harmless. See *Richards v. State*, 251 Ga. 447, 449 (1) (306 SE2d 302) (1983) (incidental use of the word "confession" in the jury charge did not contribute to the verdict); *Green v. State*, 240 Ga. App. 650, 652 (2) (523 SE2d 632) (1999) (passing reference to prior difficulties in jury charge was harmless error).

4. Davis argues that two witnesses for the State were improperly allowed to give their opinions about the ultimate issue in the case. Greg Gatley, who was Davis' neighbor, testified that he "believed [Davis] was involved in this murder at some point." Later, a detective testified that his investigation revealed that no one other than Davis had a motive to kill the victim.

With regard to Gatley's testimony, the trial court denied Davis' motion for a mistrial, but sustained his objection to the testimony, struck the testimony from the record, and gave the jury a curative instruction to disregard it. The grant or denial of a motion for a mistrial lies within the sound discretion of the trial court, which will not be disturbed on appeal unless it was manifestly abused. *Hunt v. State*, 268 Ga. App. 568, 572 (2) (602 SE2d 312) (2004). In the instant

case, " '[g]iven the trial court's curative efforts . . . and the lack of apparent prejudice, we find no abuse of discretion in the denial of [the] motion( ) for mistrial.' [Cit.]" *Smith v. State*, 271 Ga. 507, 508 (3) (521 SE2d 562) (1999).

As for the detective's testimony, Davis "did not raise [an ultimate issue] objection at trial, and is therefore procedurally barred from raising the issue on appeal. [Cit.]" *Huntley v. State*, 271 Ga. 227, 230 (5) (518 SE2d 890) (1999). Moreover, even if Davis had raised such an objection, it is without merit because the detective's testimony concerned only the issue of motive, which was not the ultimate issue in the case. "Inasmuch as the [detective] was not opining on the ultimate issue of fact and the jury was free to conclude that the [detective] was incorrect, this enumeration presents no grounds for reversal. [Cit.]" *Johnson v. State*, 266 Ga. 380, 384 (3) (467 SE2d 542) (1996).

5. Davis contends that the private investigator hired by him was part of his divorce legal team, that all communications between him and the private investigator are thus protected by the attorney-client privilege, and that the trial court therefore erred in denying his motion in limine to bar the private investigator from testifying about his communications with Davis regarding the victim's home address. However, as the trial court recognized in denying the motion in limine, this issue has already been decided adversely to Davis in a prior appeal.

When the private investigator was subpoenaed to testify before the grand jury, Davis filed a motion to quash the subpoena based on attorney-client privilege. The trial court denied the motion, and the Court of Appeals affirmed that denial on the basis that the subject communications fall within the crime-fraud exception to the privilege, which provides that "the attorney-client privilege does not extend to communications which occur before perpetration of a fraud or commission of a crime and which relate thereto. [Cit.]" *In re Fulton County Grand Jury Proceedings*, 244 Ga. App. 380, 382 (535 SE2d 340) (2000). This Court denied Davis' petition for certiorari from the Court of Appeals' ruling, which is "binding in all subsequent proceedings in [the] case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." OCGA § 9-11-60 (h). Accordingly, the trial court did not abuse its discretion in denying the motion in limine. See *Thompson v. State*, 277 Ga. App. 323, 324 (2) (626 SE2d 825) (2006) (denial of motion in limine reviewed for abuse of discretion).

6. Davis also claims that the attorney-client privilege protected a letter written by the private investigator and two letters written by

his attorneys, and therefore the trial court erred in failing to exclude those letters from evidence.

> The attorney-client privilege protects communications between the client and the attorney that are intended to be confidential; the protection does not extend to communications which are not of a confidential nature. [Cits.] . . . Nor does the privilege cover the mere fact of employment. [Cits.] Indeed, the statutes outlining the attorney-client privilege are not broadly construed; the attorney-client privilege embodied in OCGA § 24-9-24 has been confined "to its narrowest permissible limits." [Cit.] "Inasmuch as the exercise of the privilege results in the exclusion of evidence, a narrow construction of the privilege comports with the view that the ascertainment of as many facts as possible leads to the truth, the discovery of which is the object of all legal investigation." [Cit.]

*Bryant v. State*, 282 Ga. 631, 636 (4) (651 SE2d 718) (2007).

In the instant case, the three letters did not involve any communications between Davis and his attorneys. Rather, they were all communications between the private investigator and the attorneys. Moreover, the letters did not contain confidential information, and instead concerned only the fact of the investigator's employment and the attorneys' claims that the investigator's services in the divorce case fell under the attorney-client privilege. Because the letters do not contain confidential communications between Davis and his attorneys, they are not protected by the narrowly construed attorney-client privilege. See *Weakley v. State*, 259 Ga. 205 (2) (378 SE2d 688) (1989).

7. Davis argues that the trial court erred in allowing the State to make improper closing arguments that the defense had attempted to silence the private investigator. The State based such argument on the letters sent between the private investigator and the attorneys, and since the letters were properly admitted into evidence, the State was authorized to draw inferences, and make deductions, from them during the closing argument. " '(T)his Court has long held that the permissible range of argument during final summation is very wide.' [Cit.] . . . '[Moreover,] it is permissible for counsel to draw deductions from the evidence regardless of how illogical or unreasonable.' [Cit.]" *Perry v. State*, 232 Ga. App. 484, 487 (2) (c) (500 SE2d 923) (1998). Nevertheless, even if the argument went beyond the permissible range, given that the trial court instructed the jury that evidence does not include closing arguments by the lawyers, and given "the overwhelming evidence of appellant's guilt, we conclude it

is highly probable that [any] error in this instance did not contribute to the judgment against appellant, and thus was harmless. [Cit.]" *Head v. State*, 276 Ga. 131, 136 (6) (575 SE2d 883) (2003).

8. Davis asserts that the trial court violated the continuing witness rule by permitting various documents, including letters, photographs and a death certificate, to go out with the jury during deliberations.

> "In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once." [Cit.] The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations. [Cit.]

*Adams v. State*, 284 Ga. App. 534, 536 (2) (644 SE2d 426) (2007). "These documents, which generally contain their makers' assertions of purported truths, [cit.] are ascribed evidentiary value only to the extent that their makers are credible." *Bryant v. State*, 270 Ga. 266, 271 (3) (507 SE2d 451) (1998).

In this case, the challenged exhibits were not written testimony and did not derive their evidentiary value solely from the credibility of their makers. Instead, they were original documentary evidence, and were properly allowed to go out with the jury. See *Bryant v. State*, supra, 270 Ga. at 271 (3) (death certificate showing fact of death not subject to continuing witness rule); *Bollinger v. State*, 272 Ga. App. 688, 692 (2) (613 SE2d 209) (2005) (letters not written testimony and thus continuing witness rule not violated); *Kenney v. State*, 196 Ga. App. 776, 777 (2) (397 SE2d 131) (1990) (photo lineup properly permitted to go out with jury).

9. Davis claims the trial court erred in denying his motion to dismiss the indictment based on the State's loss or destruction of exculpatory evidence.

> " 'In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. [Cit.] To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was de-

stroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. [Cit.]' (Cit.)" [Cits.] " 'Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' [Cits.]" [Cit.]

*Milton v. State*, 232 Ga. App. 672, 678-679 (6) (503 SE2d 566) (1998).

In his motion to dismiss, Davis challenged the loss or destruction of a handgun, a bullet and its casing, a tassel from a hat, two gas cans, a plastic bag, a shotgun, a knife, a flashlight, a key and a telephone caller identification unit. Other than the tassel and one of the gas cans, all of the other items were found either in the victim's burned car or home, and were generally not suitable for forensic testing because they had been damaged by fire and doused with water. Furthermore, any testing that was conducted on the items was preserved at trial by witness testimony. In any event, Davis has failed to show that any of the items were exculpatory. See *Pickens v. State*, 225 Ga. App. 792, 799 (5) (484 SE2d 731) (1997). Moreover, there is no evidence that the State acted in bad faith.

Even if we were to assume that the State's "handling of the [items] (indicated) careless, shoddy and unprofessional investigatory procedures, (it did) not indicate that the police in bad faith attempted to deny [Davis] access to evidence that they knew would be exculpatory." [Cit.]

*Jackson v. State*, 258 Ga. App. 806, 810 (3) (575 SE2d 713) (2002). Accordingly, the trial court did not err in denying the motion to dismiss the indictment. See *Walker v. State*, 264 Ga. 676, 678-681 (3) (449 SE2d 845) (1994).

Davis also challenges on appeal the loss or destruction of various items that were not contested in his trial court motion, including a fingerprint card. However, by failing to contest the loss of those items in the trial court, Davis has waived any such challenges. See *Roseberry v. State*, 274 Ga. 301, 304 (3) (553 SE2d 589) (2001). Moreover, even if the challenges were not waived, they are without merit due to the lack of any showing that the State acted in bad faith. See *Walker v. State*, supra.

10. Relying on *Missouri v. Seibert*, 542 U. S. 600 (124 SC 2601, 159 LE2d 643) (2004), Davis claims his statements to police should not have been admitted into evidence. Davis' reliance on *Seibert* is misplaced.

In *Seibert*, the officers arrested the accused, subjected her to custodial questioning, obtained a confession, and only then

complied with the mandate of *Miranda* [*v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)]. Thereafter, a signed waiver was obtained from the arrestee and she gave a second confession. Under these circumstances, the Supreme Court of the United States held that both statements were inadmissible, concluding that "it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle." [Cit.]

*Wiggins v. State*, 280 Ga. 627, 629 (2) (a) (632 SE2d 80) (2006).

The circumstances in the instant case are materially different from those in *Seibert*. Davis voluntarily went to the police station in order to give a statement about his own claims that he had twice been assaulted. After completing his initial statement, the police suspected that Davis might be involved in the victim's murder. Although Davis was not taken into custody, at that point he was informed of his *Miranda* rights, which he waived in writing. Davis continued to speak to detectives, and eventually asked for an attorney. All questioning immediately ceased, and Davis was driven home by detectives. " 'Where an accused is neither in custody nor so restrained as to equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings are not required.' [Cit.]" *Durham v. State*, 281 Ga. 208, 209 (2) (636 SE2d 513) (2006). Because Davis was not in custody when he gave his statements, there was no violation of *Miranda* or *Seibert*, and the trial court did not err in allowing the statements into evidence. See *Grayer v. State*, 282 Ga. 224, 228-229 (3) (647 SE2d 264) (2007).

*Judgment affirmed. All the Justices concur.*

SEARS, Chief Justice, concurring.

It has long been the law of Georgia, in keeping with that of other United States jurisdictions, that the attorney-client privilege "includes, by necessity, the network of agents and employees of both the attorney and client, acting under the direction of their respective principals, to facilitate the legal representation."[1] I do not read anything in Division 6 of the majority opinion to signal a retreat from

---

[1] Paul S. Milich, Georgia Rules of Evidence § 21.3 (2d ed.). See *Taylor v. Taylor*, 179 Ga. 691, 692-693 (177 SE 582) (1934); *Fire Assn. of Philadelphia v. Fleming*, 78 Ga. 733, 738 (3 SE 420) (1887). See also 1 Paul R. Rice, Attorney-Client Privilege in the United States § 5:5 (2d ed.) ("Both the attorney and the client can be represented by third parties who serve as their agents. Communications from these individuals are afforded the same protection as communications from the individuals they represent or assist.") (citation omitted).

this principle.[2] With that understanding, I join the Court's opinion in full.

DECIDED APRIL 28, 2009.

*Brian Steel, Garland, Samuel & Loeb, Donald F. Samuel, Firestone & Morris, Bruce H. Morris,* for appellant.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General,* for appellee.

---

[2] See majority opinion at 347, observing that "[i]n the instant case, the three letters did not involve any communications between Davis and his attorneys," but instead "were all communications between the private investigator and the attorneys."