*511 Melton, Justice,
dissenting.
Because there is nothing unclear about Neuman’s waiver of confidentiality with respect to his communications with Dr. Thomas and Dr. Rand Dorney, I cannot agree with the majority’s erroneous conclusion that these communications were protected by attorney-client privilege. I therefore must respectfully dissent.
As the majority points out, Neuman signed a form when he met with Dr. Thomas and Dr. Rand Dorney at the j ail, and this form stated in part:
You have been referred by Mr. Robert Rubin for an independent medical examination. The purpose of this examination is to [sic] criminal responsibility & psych testing. The examination is not confidential, nor is it for the purpose of treatment. Anything we discuss in the examination may be included in the written report or may be disclosed in court. Therefore, nothing is off the record and anything you say or do during the evaluation is not a secret. When the evaluation is complete a written report will be provided to your attorney. You do not have to participate in the examination or answer any questions you do not wish to answer. If you have questions or concerns you may ask at any time and if you want to stop the examination, you may stop at any time.
This document speaks for itself, and the majority has not given any persuasive reason to support its conclusion that the document would somehow do anything other than convey a clear intention to show that the communications between Neuman and Drs. Thomas and Rand Dorney were “not confidential.” It does not matter that this form “was the only [one] that [Dr. Rand Dorney] had [available] at the time.” Maj. Op. at 507. What matters is that this is the document that was actually used, and that this specific document signed by Neuman informed him that “nothing [was] off the record and anything [he said] or d[id] during the evaluation [was] not a secret.” Nor does it matter that the written report from the evaluation was to be provided to Neuman’s attorneys, because the form clearly stated that anything included in the written report from the evaluation may also “be disclosed in court.” The fact that the attorneys would receive the report first is to be expected, but it does nothing to change the fact that the waiver form indicated that any such report could also be later disclosed in court and would not otherwise be confidential.
Furthermore, because Dr. Rand Dorney and Dr. Thomas met with Neuman at the jail to specifically discuss Neuman’s test results that were included in their records and notes, it cannot be said that *512 the form’s statement that “[a]nything . . . discuss[ed] . . . may be included in [a] written report or may be disclosed in court” was not broad enough to cover the entirety of the communications between Neuman and the doctors. Indeed, the prior communications between Neuman and Drs. Rand Dorney and Thomas only served as the basis for any written materials that the waiver form made clear would not be confidential. The majority’s efforts to minimize the impact of this waiver form are unpersuasive.
In this connection, contrary to the majority’s reasoning, the waiver form simply does not say that Neuman was only waiving “his confidential communications as necessary to carry out his representation.” Maj. Op. at 507. The form states much more broadly that the communications were “not confidential” and that “[a]nything” discussed “may be disclosed in court,” without specifying that only Neuman’s attorneys would be authorized to make such court disclosures. Further underscoring the broad nature of the waiver, the form then goes on to indicate that “nothing is off the record” and that anything said or done with Drs. Rand Dorney and Thomas would “not [be] a secret.” In the absence of this waiver form signed by Neuman, I would agree with the majority that the communications between Neuman and Drs. Rand Dorney and Thomas were protected by attorney-client privilege. However, I cannot ignore the plain language of the broadly drafted waiver form indicating otherwise. The majority, on the other hand, is straining to narrowly interpret the plain language of the waiver form in an effort to broaden the scope of the attorney-client privilege here when we should instead be construing the attorney-client privilege as narrowly as possible:
The attorney-client privilege protects communications between the client and the attorney that are intended to be confidential; the protection does not extend to communications which are not of a confidential nature.... Indeed, the statutes outlining the attorney-client privilege are not broadly construed; the attorney-client privilege embodied in [former] OCGA § 24-9-24 has been confined “to its narrowest permissible limits.” Inasmuch as the exercise of the privilege results in the exclusion of evidence, a narrow construction of the privilege comports with the view that the ascertainment of as many facts as possible leads to the truth, the discovery of which is the object of all legal investigation.
(Citation and punctuation omitted; emphasis supplied.) Davis v. State, 285 Ga. 343, 347 (6) (676 SE2d 215) (2009) (Letters that did not contain confidential information and were not between client and his *513 attorneys, but were between private investigator and client’s attorneys, were not protected by attorney-client privilege). Because I believe that the majority is incorrect for having concluded that the notes and records of Drs. Rand Dorney and Thomas were subject to the attorney-client privilege under the circumstances of this case, I must respectfully dissent.
Decided June 15, 2015
Reconsideration denied July 13, 2015.
Miller & Key, J. Scott Key; Peters, Rubin & Sheffield, Douglas N. Peters, Robert G. Rubin, for appellant.
Robert D. James, Jr., District Attorney, Anna G. Cross, Deborah D. Wellborn, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General, for appellee.