**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 12, 2024**

# In the Court of Appeals of Georgia

A24A0543. CULVERSON v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Decatur County entered a judgment of conviction against Daniel Edward Culverson for one count each of invasion of privacy (OCGA § 16-11-62 (2) (A)) and sexual battery against a child under 16 (OCGA § 16-6-22.1 (b)). Culverson appeals from the trial court's denial of his motion for new trial as amended, arguing that the evidence was insufficient to support his convictions, that the trial court erred in allowing the jury to review an exhibit after the close of the evidence, and that the cumulative effect of the trial court's errors entitles him to a new trial. Finding no error, we affirm.

Viewed in a light most favorable to the verdict,[1] the evidence adduced at trial revealed that Culverson telephoned 911 on September 11, 2020, to complain that his girlfriend, L. S., was forcing him to leave the Decatur County residence they shared with her two daughters, D. S. and M. S. When an investigator arrived and spoke with L. S., he learned that she had received multiple text messages from D. S. accusing Culverson of doing "the same thing that he was doing to [D. S.]" to M. S. and stating to L. S., "you're going to do something about it or I'm going to do something about it." L. S. returned home, confronted Culverson, and ordered Culverson to leave, which prompted his 911 call.

L. S. stated that her daughters had made allegations against Culverson "years before," but that she had not taken any action. On one occasion, D. S. told her that Culverson texted her, saying, "if you keep wearing those booty shorts, you're going to get what you want." L. S. confronted him and "kicked him out of the house[,]" but the couple reconciled. Other allegations included Culverson hiding in the daughters' closets while they showered and looking at the daughters through their bedroom windows. Of particular relevance to this appeal, the daughters told L. S. that when

---

[1] See *Rogers v. State*, 369 Ga. App. 543 (894 SE2d 85) (2023).

they would get out of the shower, they would see a "little snakehead" camera under the bathroom door. In an attempt to stop the camera, the girls would either toss towels on top of the camera or stuff towels under the door before showering.

After speaking with L. S., the investigator then met with M. S. and D. S. The girls' reports were similar, but more detailed. M. S. also revealed that Culverson would touch her breasts when he would slip money into her bra. M. S. later found the camera used under the bathroom door hidden in Culverson's bedroom. Finally, the investigator spoke with Culverson, who denied the girls' accusations and maintained the girls were lying, particularly about him hiding in the closet.

At trial, the girls' uncle (L. S.'s brother) testified that he noticed a change in the girls' behavior in the years leading up to September 2020. During that time, the girls eventually reported Culverson's conduct to the uncle, with M. S. telling him that Culverson would hide in the bushes outside her window and look inside and that D. S. discovered Culverson hiding in her closet when she came into her bedroom after showering. The uncle angrily confronted L. S., telling her that she needed to "call the law" and that "[s]omething needs to be done about this[;]" in response, L. S. stated

only that "she was going to do her own investigation." When the uncle confronted Culverson, Culverson's only response was that L. S. "would be mad."

D. S. testified that Culverson took her clothes out of the bathroom while she showered, requiring her to return to her bedroom wearing only a towel; Culverson would hide in the closet or between her bed and the wall to watch her remove her towel. She also stated that Culverson inserted a camera under the bathroom door while she showered and that she discovered the camera when she got out of the shower. In addition, she testified that Culverson would hide in the bushes outside her bedroom window. M. S. testified that she also saw the camera under the bathroom door when she was showering and that Culverson touched her breasts and tried to put money in her bra. For his part, Culverson denied any wrongdoing and testified that the allegations against him were in retaliation for serving as the victims' disciplinarian.

A Decatur County grand jury indicted Culverson for three counts of child molestation, two counts each of enticing a child for indecent purposes and invasion of privacy, and one count of sexual battery against a child under 16. The trial court directed a verdict of acquittal on the two counts of enticing a child for indecent purposes and on one count of invasion of privacy, and the jury found Culverson not

guilty of the child molestation counts. The jury returned verdicts of guilty against Culverson on the remaining counts of invasion of privacy and sexual battery against a child under 16, and the trial court denied Culverson's motion for new trial as amended. This appeal follows.

1. In two related enumerations of error, Culverson contends that the evidence was insufficient to support his convictions and that his motions for directed verdict on the two charges for which he was convicted should have been granted. We disagree.

Under Georgia law,

> [i]t is well settled that the standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction: the evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. The evidence must be viewed in the light most favorable to support the verdict and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine the credibility of witnesses.

(Citation and punctuation omitted.) *King v. State*, 364 Ga. App. 263, 265 (874 SE2d 439) (2022).

(a) *Invasion of Privacy*. Subject to exceptions which are not applicable to this case, "[i]t shall be unlawful for . . . [a]ny person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view[.]" OCGA § 16-11-62 (2). Here, both M. S. and D. S. testified that they spotted a "little snakehead" camera spying on them from underneath the bathroom door while they showered and as they got out of the shower. D. S. also testified that, while she did not see who was holding the camera on the other side of the door, she identified Culverson because she "could hear him walking in his boots." Finally, the camera was later found in Culverson's bedroom. See OCGA § 16-11-62 (2).

(b) *Sexual Battery against a Child under 16*. "A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person." OCGA § 16-6-22.1 (b). The definition of "intimate parts" includes the female breasts. OCGA § 16-6-22.1 (a). At trial, M. S. testified that Culverson, who was the disciplinarian of the household, touched her breasts when she was younger than 16. In addition, the uncle's testimony that M. S. cried and became "really . . . upset" as she told him that

Culverson "was touching her" authorized the jury to conclude that the touching was accomplished without her consent. See OCGA §§ 16-6-22.1 (b), 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); see also *Smith v. State*, 361 Ga. App. 436, 439 (1) (b) (864 SE2d 645) (2021) (holding, in prosecution for aggravated sexual battery, that the jury could infer lack of consent from other evidence and that victim was not "required to testify that she did not consent"); *Nembhard v. State*, 360 Ga. App. 568, 569-570 (1) (859 SE2d 118) (2021) (noting, in affirming sexual battery conviction, that defendant's touching "had no benign or non-sexual purpose" and that defendant was in an authority position over victim).

Therefore, viewed in a light most favorable to the verdict, we conclude that a rational trier of fact could have found Culverson guilty beyond a reasonable doubt of the crimes with which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Reyes v. State*, 356 Ga. App. 346, 348 (1) (847 SE2d 25) (2020) (finding evidence of sexual battery sufficient where defendant touched victim's breasts); *Price v. State*, 320 Ga. App. 85, 86 (2) (738 SE2d 289) (2013) (concluding evidence of invasion of privacy sufficient where defendant placed hidden camera to record victim showering and dressing); *Snider v. State*, 238 Ga. App. 55,

57-58 (1) (b) (516 SE2d 569) (1999) (finding evidence of invasion of privacy sufficient where nude defendant watched adopted daughter through bathroom window).

2. Next, Culverson argues that the trial court erred in allowing the jury to review a series of text messages after the evidence closed. Because the text messages were not subject to the continuing witness rule, we find no error.

In its case in chief, the State tendered a series of text messages between the victim and her mother into evidence. The trial court admitted the text messages as State's Exhibit 1 without objection, and the State published the exhibit to the jury. The trial court did not allow the exhibit to go out with the jury, noting that "[t]hey can always send a note requesting to re-see them again. . . ." During deliberations, the jury sent a note to the trial court, indicating that it was "missing State's Evidence #1[.]" The trial court indicated it would instruct the jury on Georgia's continuing witness rule and allow the jury to inspect the exhibit in the courtroom. Culverson objected to the court's proposed procedure and asked that the trial court simply instruct the jury on the continuing witness rule. The trial court overruled Culverson's objection,

instructed the jury on the continuing witness rule, and allowed the jury to review the exhibit in the courtroom.[2]

Under Georgia law,

the continuing witness objection is based on the idea that it is unfair and places undue emphasis on written testimony, which is heard by the jury when given from the witness stand, for the writing to go out with the jury to be read again during deliberations, given that oral testimony is received only once, when given from the witness stand.

*Clarke v. State*, 308 Ga. 630, 636 (4) (842 SE2d 863) (2020). See also *Keller v. State*, 308 Ga. 492, 505-506 (9) (842 SE2d 22) (2020). However, the text messages in this case

were not the reduction to writing of an oral statement, nor a written statement provided in lieu of testimony. Instead, they were original documentary evidence. The challenged exhibits were not written testimony and did not derive their evidentiary value solely from the credibility of their makers. Instead, they were original documentary evidence, and were properly allowed to go out with the jury.

---

[2] The trial court allowed the jurors to pass the exhibit amongst themselves "because that's how they saw it in the first place." The record indicates that the jury reviewed the text messages for as long as 34 minutes.

(Citation omitted.) *Clarke*, 308 Ga. at 636 (4); accord *Keller*, 308 Ga. at 506 (9). Accordingly, we find no error.[3]

3. Finally, Culverson asserts that the cumulative effect of the trial court's errors entitles him to a new trial. As Culverson has only identified one purported error, the cumulative error analysis does not apply.

In *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020), the Supreme Court of Georgia adopted a cumulative error analysis, articulating that "the proper approach [for such an analysis] is to consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel." Of course, "where, as here[,] there are not multiple errors, there can be no cumulative error." *Williams v. State*, 358 Ga. App. 152, 157 (c) (853 SE2d 383) (2021). See also *Martin v. State*, 360 Ga. App. 1, 10 (3) (860 SE2d 582) (2021). Here, the only alleged error Culverson identified was the trial court's decision to allow the jury to review an exhibit after the close of the evidence — an allegation that we determined

---

[3] *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009), upon which Culverson solely relies, does not require a different result. In addition to having been decided over a decade before the discussion of text messages and the continuing witness rule in *Clarke*, 308 Ga. at 636 (4), and *Keller*, 308 Ga. at 505-506 (9), *Davis* determined that documents including "letters, photographs and a death certificate" were properly allowed to go out with the jury. Id.

lacked merit in Division 2. To the extent Culverson claims that sufficiency of the evidence should be a part of the cumulative error analysis, we are unpersuaded. See generally *Rodgers v. Kirkland*, No. CV 07-2807 RGK (FFM), 2011 U. S. Dist. LEXIS 104625, *53 (VI) (G) (C.D. Cal. 2011) ("Petitioner's sufficiency of the evidence claim does not lend itself to a cumulative error claim because it involves no error that impacted the jury's verdict. Rather, it merely challenges whether that verdict was supported by sufficient evidence."). As a result, Culverson's cumulative error argument fails on this basis.

*Judgment affirmed. Doyle, P. J., and Watkins, J., concur.*